﻿Citation Nr: AXXXXXXXX
Decision Date: 02/27/20 Archive Date: 02/27/20

DOCKET NO. 190624-10414
DATE: February 27, 2020

ORDER

Entitlement to service connection for a left knee condition is denied.

REMANDED

Entitlement to a rating in excess of 10 percent for right knee strain with degenerative arthritis is remanded.

FINDING OF FACT

The preponderance of the evidence is against the establishment of an in-service injury or event related to the Veteran’s left knee. 

CONCLUSION OF LAW

The criteria for entitlement to service connection for left knee condition have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.303(a), 3.309 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the U.S. Army from February 1982 to May 1982.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. This law went into effect in February 2019. Before then, the Veteran chose to participate in the VA’s test program, RAMP, the Rapid Appeals Modernization Program. The Board is honoring the Veteran’s choice.

The Veteran selected the higher-level review lane when she submitted the RAMP election form. Accordingly, the November 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form, which was June 25, 2018. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The Veteran only limited her appeal to the issues of entitlement to service connection for a left knee condition and entitlement to an increased rating for her right knee condition. Therefore, the issue of service connection for tension headaches is not included in this appeal.

Service Connection

A Veteran is granted service connection where evidence shows that an injury or disease that results in a current disability was incurred during service or was aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

To be entitled to service connection, the evidence must support (1) a current disability; (2) an in-service injury or event; and (3) a nexus between the current disability and the in-service injury or event. 38 C.F.R. § 3.303(a).

Service connection can also be granted for chronic disabilities, if the evidence establishes that it manifested to a compensable degree within one year after the Veteran was separated from service. 38 C.F.R. § 3.307, §3.309. Service connection for chronic disabilities can be established through a showing of continuity of symptomatology since service, as an alternative to the nexus requirement. 38 C.F.R. § 3.303(b). This option is limited to chronic disabilities listed in 38 C.F.R. § 3.309(a).

When a reasonable doubt arises regarding service origin, the degree of disability, or any other point, after careful consideration of all procurable and assembled data, such doubt will be resolved in favor of the claimant. Reasonable doubt is one which exists because of an approximate balance of positive and negative evidence which does not prove or disprove the claim satisfactorily. It is a substantial doubt and one within range of probability as distinguished from pure speculation or remote possibility. See 38 C.F.R. § 3.102.

1. Entitlement to service connection for a left knee condition.

The Veteran contends that she suffers from a left knee condition that can be attributed to her military service.

Regarding a current disability of the left knee, in both VA examinations conducted in June and December 2016, the examiners did not render a diagnosis for the left knee. At the June 2016 examination, the Veteran did report experiencing occasional pain and swelling of the left knee. Limited range of motion and crepitus were noted at the examination. At the December 2016 VA examination, limited range of motion was noted for the left knee. Thus, resolving doubt in the Veteran’s favor, the Veteran has a disability that functionally impairs her use of the left knee. See Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018). 

Regarding an in-service injury or event, the service treatment records show complaints, diagnosis, and treatment of a right knee strain. In March 1982, the Veteran complained of right knee pain only. The service treatment records are absent any complaints regarding pain for the Veteran’s left knee. In an August 1985 Report of Medical Examination, the Veteran’s lower extremities were marked as normal on the clinical evaluation. Additionally, the Veteran herself did not report experiencing left knee pain on that August 1985 report. Post-service medical records only note complaints and treatment of the Veteran’s right knee, along with other disabilities, such as left wrist and headaches. See VA Treatment Records from September 2017 to March 2018. 

Furthermore, there are no assertions from the Veteran regarding the onset of her symptoms related to her left knee condition. The Veteran does not assert experiencing any left knee pain since her separation from her service. 

After a thorough consideration of the evidence of the record, the preponderance of the evidence is against the establishment of an in-service injury or event related to the Veteran’s left knee. The service treatment records do not show any complaints, diagnosis, or treatment of left knee pain. The Veteran complained of right knee pain. So, if she was experiencing left knee pain, it would be reasonable that the Veteran would have reported that along with her right knee pain. The VA treatment records are absent any complaints, diagnosis, or treatment of left knee pain. As mentioned before, it would be reasonable for the Veteran to note left knee pain when reporting her right knee pain during these post-service visits. 

The Board acknowledges the Veteran’s assertion that she suffers from a left knee condition due to her service. However, evidence of the record does not establish an incurrence of an event or injury related to her left knee. The Veteran does not assert a specific in-service injury to her left knee. Alternatively, there is no evidence, lay or medical, that shows that the Veteran has experienced continuous symptoms of a left knee condition since her separation from her service. The first notation of a possible left knee condition is at the June 2016 VA examination, which is many years after her service. Therefore, the Veteran’s assertion is outweighed by the medical evidence of the record. 

The Board does not determine that the Veteran’s assertions lack credibility merely because those assertions are unaccompanied by contemporaneous medical evidence. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006). The Board finds that the Veteran’s assertions are contradicted by the medical reports of symptoms. As explained above, she reported right knee pain during her service, while not reporting left knee pain. The Veteran denied any knee symptoms in the August 1985 Report of Medical Examination.

Since there is no probative evidence establishing an in-service event or injury, the Board finds that service connection cannot be warranted. The Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the claim, the doctrine is not applicable.

REASONS FOR REMAND

Entitlement to a rating in excess of 10 percent for right knee strain with degenerative arthritis is remanded.

After a thorough review of the evidence submitted at the time of the receipt of the RAMP Opt-in election form in June 2018, the Board finds that a pre-decisional duty to assist error was made, thus, a remand is necessary to cure the error.

The Veteran is seeking a higher rating for her service-connected right knee condition. At the June 2016 VA examination, the Veteran reported that flare-ups impacted the function of her right knee. The VA examiner concluded that loss of function due to flare-ups cannot be determine without resorting to mere speculation. The examiner explained that swelling from over use could further limit her ability to stand or walk. Joint testing pain on passive motion, weight and non-weight bearing were not performed at that examination.

At the December 2016 VA examination, although the examiner indicated that the Veteran did not report flare-ups, the Veteran stated that her knee swells frequently, has occasional stiffness, and that she is not able to stand for long periods of time. Joint testing pain on passive motion, weight and non-weight bearing were not performed at that examination as well. 

The Court held in Correia v. McDonald, 28 Vet. App. 158 (2016), that VA examinations must include joint testing for pain on both active and passive motion, in weight bearing and non-weight bearing and, if possible, with range of motion measurements of the opposite undamaged joint. In Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court held that if there is evidence of flare-ups with functional loss, and the examiner concludes that an opinion regarding the estimated range of motion cannot be provided without resorting to speculation, VA may rely on that conclusion only if (1) it is clear that the examiner has considered all procurable and assembled data; and (2) the opinion must result from a limitation of the medical community at large and not a limitation based on lack of expertise, insufficient testing, or unprocured testing by the examiner. Id. at 33. 

The failure to provide examinations that are complaint with the holdings in Correia and Sharp is a pre-decisional error. Accordingly, the Board finds that a remand is necessary in order to obtain an examination that that either attempts to estimate additional functional impairment on flare-ups or provides satisfactory rationale for why such an estimate is not possible. Additionally, tests for passive motion, weight and non-weight-bearing should be performed. 

The matter is REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination or examinations to determine the current nature and severity of her service-connected right knee disability. The claims file and a copy of this REMAND should be made available for the examiner. 

The examiner must conduct all indicated tests and studies, to include range of motion studies, as indicated below:

a) The knees must be tested in both active and passive motion, and in weight-bearing and non-weight-bearing. The examiner should identify at what point during the range of motion that pain sets in.

If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she must clearly explain why that is so.

b) The examiner must describe any pain, weakened movement, excess fatigability, instability of station and incoordination present.

c) The examiner must also state whether the examination is taking place during a period of flare-up (e.g., on a "bad day"). If not, the examiner must ask the Veteran to describe the flare-ups she experiences, including: frequency, duration, characteristics, precipitating and alleviating factors, severity and/or extent of functional impairment she experiences during a flare-up of symptoms and/or after repeated use over time.

Based on the Veteran's lay statements and the other evidence of record, the examiner must provide an opinion estimating any additional degrees of limited motion caused by functional loss during a flare-up or after repeated use over time. If the examiner cannot estimate the degrees of additional range of motion loss during flare-ups or after repetitive use without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

d) The examiner is requested to identify the presence, or absence of ankylosis of the right knee. If the presence of ankylosis is identified, this determination should be expressed in terms of whether the ankylosis is favorable or unfavorable; and, if feasible, in terms of the degrees of flexion or extension in which the right knee joint is ankylosed.

e) The examiner should identify any nerves and muscle groups affected and state whether the level of impairment is characterized as slight, moderate, moderately severe, or severe.

If any nerve involvement is wholly sensory, the examiner should so indicate.

In answering all questions, please articulate the reasons underpinning every conclusion. That is, (1) identify what facts and information, whether found in the record or outside the record, support the conclusion, and (2) explain how that evidence justifies the conclusion.

 

 

DEBORAH W. SINGLETON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Middleton, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.